

ENTERED
CLERK, U.S. DISTRICT COURT

JUL - 3 2006

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

JUN 30 2006

CENTRAL DISTRICT O. C.
BY

1

2

3

4

5

6

7

8

9

10

11

12

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE G. POTTER and CHARLES B. KRIEGER, | CV 04-10607 GPS (JWJx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING PSI DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| B. WAYNE HUGHES; B. WAYNE HUGHES, JR; TAMARA HUGHES GUSTAVSON; DANN V. ANGELOFF; MARVIN M. LOTZ; HARVEY LENKIN; RONALD L. HAVNER, JR; THOMAS J. BARRACK, JR; ROBERT J. ABERNETHY; WILLIAM C. BAKER; URI P. HARKHAM; DANIEL C. STATON; JOHN T. EVANS; JOHN REYES; DAVID GOLDBERG; A. TIMOTHY SCOTT, and does 1 through 100, inclusive, | |
| Defendants. | |
| and | |
| PUBLIC STORAGE, INC., a California Corporation, | |
| Nominal Defendant | |



75

1    Defendants David Goldberg, Ronald L. Havner, Jr., Harvey Lenkin, Marvin M. Lotz, John

2    Reyes, A. Timothy Scott, and Public Storage, Inc. ("PSI Defendants") move for dismissal of this

3    action pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]   The Court deemed this matter

4    appropriate for decision without oral argument and vacated the hearing. Local Rule 7-15. For the

5    reasons set forth herein, the Court hereby **GRANTS** the motion and dismisses this action with

6    prejudice.

7    **I.    BACKGROUND**

8    This is a shareholders' derivative suit brought on behalf of nominal defendant Public

9    Storage, Inc. ("PSI") against present and former directors or executive officers of the company.

10   PSI was organized and formed in 1980 by affiliates of an entity owned by Defendants B. Wayne

11   Hughes, B. Wayne Hughes, Jr., and Tamara Hughes Gustavson (collectively the "Hughes Family

12   Defendants"). PSI is engaged in the business of leasing self-storage facilities. Verified Amended

13   Complaint (hereinafter "Am. Compl.") ¶ 43.   The company is incorporated in California and

14   maintains its headquarters in Glendale, CA. *Id.* ¶ 18.  PSI's stock is listed and traded on the

15   NYSE and the Pacific Exchange. *Id.*

16   Through this action, Plaintiffs seek to recover hundreds of millions of dollars that

17   Defendants allegedly misappropriated from PSI through two separate transactions. Am. Compl.

18   ¶ 1. The first transaction relates to the operations of an entity known as PS Insurance Company,

19   Ltd. ("PSIC") and its subsequent sale to PSI on December 31, 2001 (hereinafter the "PSIC

20   Transaction"). *Id.* ¶ 5.  PSIC reinsures insurance policies for tenants who lease PSI storage

21   facilities. *Id.* ¶ 62.   The company was formed sometime prior to 1995 and was wholly owned by

22   the Hughes Family Defendants.

23   Plaintiffs allege that Defendants engaged in a series of related frauds in connection with

24   PSIC prior to November 1995 and continuing through December 2001. Am. Compl. ¶ 5.  The

25   frauds included: (1) the unjust, uncompensated and undisclosed seizure, sometime prior to 1995,

26

27   ─────────────────

28   [1] All named defendants have filed notices of joinder in the present motion.

1  of a valuable corporate opportunity from PSI and its shareholders by the Hughes family through

2  their ownership of PSIC; (2) the issuance to the Hughes family of an estimated $212 million

3  (current value) of excess stock in PSI at the time of a 1995 merger; (3) the subsequent

4  undisclosed use of valuable PSI resources without compensation to PSI, from before 1995

5  through 2001, to conduct and operate the seized business opportunity; (4) the benefit of six years

6  (1996 through 2001) of PSIC's profit from the seized corporate opportunity by the Hughes Family

7  Defendants, which should have gone to PSI; and (5) the subsequent sale of the seized

8  opportunity back to PSI on December 31, 2001, at a fraudulent, unjust and unreasonable cost to

9  PSI and its public shareholders. *Id.* Plaintiffs further allege that the PSIC transactions resulted

10  in the unjust transfer of wealth, estimated to be around $372 million, from PSI and its

11  shareholders to the Hughes family. *Id.* ¶ 65.

12      The second transaction (hereinafter the "Canadian Transaction") relates to services

13  allegedly provided by PSI to certain Canadian entities owned in whole or in part by the Hughes

14  Family Defendants.[2] Am. Compl. ¶ 7. Plaintiffs assert that Defendants failed to compensate or,

15  at best, inadequately compensated PSI for the use of its resources. *Id.* According to Plaintiffs,

16  prior to December 31, 2003, all or most of the Canadian entities' officers were senior officers and

17  employees of PSI who were paid by PSI. *Id.* ¶ 9. Additional PSI personnel were allegedly

18  engaged in the supervision and operation of the Canadian properties and provided other

19  administrative assistance, namely tax-related services. *Id.* ¶ 77. Plaintiffs contend that

20  Defendants failed to disclose to these transactions to PSI shareholders. *Id.* ¶ 78.

21      Based on these transactions, Plaintiffs aver that Defendants wrongfully refused the

22  demands of shareholders, breached their fiduciary duties of candor, care, good faith, loyalty and

23  full disclosure, fraudulently wasted corporate assets, and failed to disclose material information

24  to public shareholders, all in violation of federal law, including the Sarbanes-Oxley Act. Am.

25  Compl. ¶ 2.

26  _____

27  [2] The Canadian entities include Public Storage Canadian Properties ("PSCP"), a Canadian
    public limited partnership owned and controlled by the Hughes family. Am. Compl. ¶ 7.
28

1        Plaintiffs allege claims against the Hughes Family Defendants and thirteen other current

2  and former officers and directors of the company.

3        Defendant B. Wayne Hughes ("Hughes") is the Chairman of the Board of Directors of PSI

4  and has been a director of the company since its organization. Am. Compl. ¶ 26. Hughes was

5  the President and Co-Chief Executive Officer from 1980 until November 1991, when he became

6  the Chairman of the Board and sole Chief Executive Officer. *Id.*

7        Defendant B. Wayne Hughes Jr. ("Hughes Jr.) is currently a director of PSI and was the

8  Vice President of Acquisitions. Am. Compl. ¶ 27. Hughes Jr., who is the son of Defendant

9  Hughes, became a director of PSI in January 1998 and was employed by the company from 1989

10  to 2002 serving as the Vice President of Acquisitions from 1992 to 2002. *Id.*

11        Defendant Tamara Hughes Gustavson is the daughter of Defendant Hughes and was the

12  Vice President of Administration of PSI until 2002. Am. Compl. ¶ 28.

13        Defendant Ronald L. Havner Jr. became the elected Vice-Chairman, Chief Executive

14  Officer, and a director of PSI in November 2002. Am. Compl. ¶ 29.

15        Defendant Dann V. Angeloff has been a director of PSI since the company's organization

16  in 1980. Am. Compl. ¶ 30.

17        Defendant Marvin M. Lotz was a director and a Senior Vice President of PSI until March

18  2004, when he terminated his employment. Am. Compl. ¶ 31.

19        Defendant Harvey Lenkin ("Lenkin") has been a director and the President of PSI since

20  1991. Am. Compl. ¶ 32. Lenkin has been employed by PSI or its predecessor, an entity

21  controlled by the Hughes Family, for over 25 years. *Id.*

22        Defendant Thomas J. Barrack, Jr. was a director of the company from 1998 until May 2003.

23  Am. Compl. ¶ 33. He, however, chose not to stand for reelection. *Id.*

24        Defendant John T. Evans ("Evans") is a member of PSI's Audit Committee and became

25  a director of the company in August 2003. Am. Compl. ¶ 34. In addition, Evans, until August

26  2003, was a director of Canadian Mini-Warehouse Properties Ltd. ("CMP"), a Canadian

27  corporation owned by the Hughes Family. *Id.*

28

1        Defendant Robert J. Abernethy has been a director of PSI since its formation. Am. Compl.

2  ¶ 35.

3        Defendant William C. Baker has been a director of PSI since 1991. Am. Compl ¶ 36.

4        Defendant Uri P. Harkham has been a director of PSI since March 1993. Am. Compl. ¶

5  37.

6        Defendant Daniel C. Staton, who became a director of PSI in 1999, is the Chairman of the

7  Compensation Committee and a member of the Audit Committee and the Nominating/Corporate

8  Governance Committee. Am. Compl ¶ 38.

9        Defendant John Reyes ("Reyes") became PSI's Senior Vice-President and Chief Financial

10  Officer in December 1996. Am. Compl. ¶ 39. Prior to that, Reyes was PSI's corporate controller.

11  *Id.*

12        Defendant David Goldberg is PSI's Vice President-Senior Counsel and Secretary. He has

13  been employed by PSI since at least 1995. Am. Compl. ¶ 40.

14        Defendant A. Timothy Scott ("Scott") has been PSI's Vice-President and Tax Counsel since

15  1996. Am. Compl. ¶ 41. Prior to joining PSI, Scott was affiliated with the law firm HellerEhrman,

16  the firm that represented certain entities owned by the Hughes Family Defendants. *Id.*

17        This action was filed on December 30, 2004. Defendants moved to dismiss the complaint

18  on April 18, 2004. On June 20, 2005, the Court heard argument and granted Defendants' motion

19  finding Plaintiffs lacked standing to maintain the shareholder's derivative suit pursuant to Federal

20  Rule of Civil Procedure 23.1. Plaintiffs were given 20 days to amend the deficiencies in the

21  pleading. On July 12, 2005, Plaintiffs filed a Verified Amended Complaint. PSI Defendants now

22  seek dismissal of the amended pleading primarily on grounds that Plaintiffs lack standing.

23  **II.  LEGAL STANDARD**

24        Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain

25  statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright &

26  Arthur Miller, Federal Practice and Procedure § 1356 (1990). The court must accept all material

27  allegations in the complaint as true and construe them in the light most favorable to the plaintiff.

28

1   *See NL Indus. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986); *see also Russell v. Landrieu,* 621

2   F.2d 1037, 1039 (9th Cir. 1980).

3         "Dismissal without leave to amend is improper unless it is clear that the complaint could

4   not be saved by any amendment." *Polich v. Burlington Northern, Inc.,* 942 F.2d 1457, 1472 (9th

5   Cir. 1991). However, a district court can deny leave "where the amendment would be futile....or

6   where the amended complaint would be subject to dismissal." *Saul v. U.S.,* 928 F.2d 829, 843

7   (9th Cir. 1991) (citations omitted). Moreover, the court's discretion in deciding whether to dismiss

8   without leave to amend "is particularly broad" when plaintiffs previously have been granted leave

9   to amend. *Simon v. Value Behavioral Health, Inc.,* 208 F.3d 1073, 1084 (9th Cir. 2000); *see also*

10  *Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir. 1990) (repeated failure to cure deficient

11  pleadings provides grounds to deny leave to amend).

12        Further, "[i]t is appropriate to address the question of standing in deciding a motion to

13  dismiss because the elements of standing are an indispensable part of the plaintiff's case, and

14  accordingly must be supported at each stage of litigation in the same manner as any other

15  essential element of the case." *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1140 (9th

16  Cir. 2003) (internal quotations and citations omitted).

17  **III.   DISCUSSION**

18        The Court, accepting as true all material allegations of the complaint, concludes that

19  Plaintiffs do not have standing to maintain this suit under Federal Rule of Civil Procedure 23.1.

20  Therefore, the Court need not address Defendants' remaining arguments.

21        A. <u>Plaintiffs Lack Standing to Maintain Claims Regarding the PSIC Transaction</u>

22        Rule 23.1 of the Federal Rules of Civil Procedure sets forth the procedural requirements

23  for bringing a shareholders' derivative action in federal court. Rule 23.1 provides, in pertinent part,

24  that "the complaint shall be verified and shall allege [] that the plaintiff was a shareholder or

25  member at the time of the transaction of which the plaintiff complains..." Fed. R. Civ. P. 23.1.

26  This requirement is commonly referred to as the "contemporaneous ownership rule." *Lewis v.*

27  *Chiles,* 719 F.2d 1044, 1047 (9th Cir. 1983). A plaintiff's "failure to own stock in [nominal

28

1   defendant] contemporaneously with bringing suit deprives them of standing to pursue their claims

2   derivatively." *Kona Enterprises, Inc. v. Estate of Bishop,* 179 F.3d 767, 769 (9th Cir. 1999).

3           In this case, the amended complaint alleges that "Plaintiff Krieger purchased his shares

4   of PSI common stock in June 2002, and has held these shares continuously to the present." Am.

5   Compl. ¶ 24.  Prior to this date, Plaintiff Krieger was not a shareholder.  Thus, the only relevant

6   inquiry is whether the PSIC Transaction occurred before June of 2002.

7           Plaintiffs have repeatedly alleged that the PSIC Transaction began in 1995 and culminated

8   with the sale of PSIC by the Hughes Family Defendants to PSI on December 31, 2001. *Compare*

9   Am. Compl. ¶ 5 *with* Original Compl. ¶ 95.  Krieger clearly was not a PSI shareholder during the

10  time of this transaction, as the transaction was completed well in advance of his acquisition of

11  shares.  Therefore, the face of the verified pleading, as amended, establishes that Krieger does

12  not have standing to bring claims based on the PSIC Transaction.

13          However, Plaintiffs argue that Krieger has standing to assert derivative claims based on

14  the contention that the PSIC Transaction constitutes a "continuing wrong" which "commenced

15  sometime before 1995, but has not been fully executed." Am. Compl. ¶ 25.  This allegation, which

16  was not contained in the original complaint, is aimed at invoking the so-called "continuing wrong"

17  exception to contemporaneous ownership requirement of Rule 23.1.  The "continuing wrong"

18  doctrine allows a plaintiff to bring suit for injuries suffered by the corporation subsequent to

19  plaintiff's acquisition of stock if the series of events of which plaintiff complains can be construed

20  as constituting a single transaction. 7C Wright, Miller & Kane, *Federal Practice & Procedure*: Civil

21  2d § 1828 at 65.

22          The Ninth Circuit has not addressed the effect of the "continuing wrong" exception on the

23  standing requirements of Rule 23.1.  Nevertheless, "federal courts generally have rejected the

24  contention than an entire series of events constitutes a single transaction...entitling a plaintiff to

25  bring suit for injuries suffered by the corporation subsequent to plaintiff's acquisition of stock.

26  Rather, plaintiff has been barred from complaining about events of this character on the theory

27  that they assume their wrongful character as of the time of the initial event, which antedated

28  plaintiff's gaining shareholder status." 7C Wright, Miller & Kane, *Federal Practice & Procedure*:

Civil 2d § 1828 at 65.[3]  Indeed, a district court in this circuit considered the "continuing wrong" notion and declined to apply the exception, concluding that "the standing requirements of Rule 23.1 should not be eroded." *In re Rasterops Corp. Secs. Litig.*, 1993 WL 476651, *7 (N.D. Cal. Sept. 10, 1993).

Plaintiffs, in urging the Court to adopt the "continuing wrong" notion, cite to out of district cases in which the exception was applied enabling a plaintiff who acquired stock after the alleged wrong was committed to maintain a derivative suit. Pls' Opp'n P. & A. pp. 10-12.  Plaintiffs rely primarily on the Fifth Circuit case, *Bateson v. Magna Oil Corp.*, 414 F.2d 128 (5th Cir. 1969).  In that case, the court held that "where the complaint charged continuing wrongs, occurring at the time plaintiff owned stock, the complaint should not be dismissed on defendant's contention that the claims actually arose prior to the time plaintiff acquired his stock." *Id.* at 130 (citations omitted).

However, Plaintiffs' reliance on *Bateson* is misplaced.  The position taken by the Fifth Circuit is certainly not the prevailing view on the "continuing wrong" doctrine and, moreover, is not a view that has been accepted by the Ninth Circuit.  *See* 7C Wright, Miller & Kane, *Federal Practice & Procedure*: Civil 2d § 1828 at 66.  Nevertheless, the facts of *Bateson* are distinguishable inasmuch as the plaintiff in that case owned stock in the corporation continuously for eleven years prior to selling it.  *Bateson*, 414 F.2d at 131.  He then reacquired stock in order to file the derivative suit.  *Id.*  The court, recognizing that the plaintiff was a "longtime stockholder" who appeared to be "concerned with the management of the company[,]" concluded the plaintiff was not attempting to litigate a "purchased grievance[]."  *Id.*

In contrast, proposed lead plaintiff Krieger only recently acquired his stock in PSI, and did so after the PSIC Transaction was completed.  Further, in support of its initial motion to dismiss, Defendants asserted that Krieger was previously embroiled in an unrelated legal dispute with PSI

---

[3] Moreover, it is noted that the continuing wrong doctrine has been invoked sparingly even by those courts that have chosen to adopt the exception.  *See In re Bank of N.Y. Derivative Litig.*, 173 F. Supp. 2d 193, 198 (S.D.N.Y. 2001).

1  involving a PSI vendor, Community Online Protection Systems, Inc. ("COPS"). Defs' Reply P. &

2  A in Support of Motion to Dismiss Original Complaint 1: 1-4; *see also* Original Compl. ¶ 106.

3  Krieger, who apparently was a COPS shareholder, had discussions with PSI regarding allegations

4  that senior managers of PSI engaged in misrepresentation and breached various contracts with

5  COPS. *Id.* In light of this unrelated dispute, and considering the timing of Krieger's purchase of

6  PSI stock, the Court is unable to conclude that Krieger is not attempting to litigate a "purchased

7  grievance." For these reasons, the *Bateson* case is inapposite and provides no basis for the

8  Court to apply the "continuing wrong" doctrine to this matter.

9      Considering the "continuing wrong" exception is not the law in this Circuit, and in light of

10  the clear standing requirements of Rule 23.1, Plaintiffs' position is unpersuasive.[4]   The Ninth

11  Circuit has explained that the contemporaneous ownership rule "stems from the equitable nature

12  of derivative litigation which allows a shareholder "to step into the corporation's shoes and to seek

13  in its right the restitution he could not demand in his own." *Lewis,* 719 F.2d at 1047 (citation

14  omitted). Moreover, this Court notes that Rule 23.1 is intended to prevent "purchases grievances,"

15  i.e. the acquisition of stock with the pre-existing plan to pursue a shareholder's derivative suit.

16  *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 532 n.6, 78 L. Ed. 2d 645, 104 S. Ct. 831 (1984).

17  Thus, this Court is not inclined to adopt an exception that could result in the circumvention of the

18  well-settled standing requirements for derivative litigation.

19

20      [4] The Court notes that even if the "continuing wrong" doctrine was recognized in this Circuit,

21  the amended complaint fails to allege facts that would trigger this exception. Plaintiffs predicate
their "continuing wrong" argument on the allegation that the PSIC Transaction "commenced

22  sometime before 1995, but has not been fully executed, as the Hughes Family continues to
receive dividends on the shares they received from the overpriced sale of PSIC to PSI in 2001."

23  Am. Compl. ¶ 25. Plaintiffs further allege the "ongoing payments of dividends to the Hughes
family on shares of PSI stock they received from the PSIC Transaction." *Id.* ¶ 60. However, the

24  allegation that Defendants continue to receive dividends from allegedly improperly obtained

25  shares is insufficient to invoke the exception. Indeed, if the Court were to accept this position,
then plaintiffs could buy into grievances as long as defendants maintained their stock in the

26  corporation. In other words, the mere allegation that defendants continue to profit from ill-gotten
securities would suffice to confer standing on any plaintiff regardless of when their stock was

27  purchased. Inasmuch as the standing requirements for derivative suits are aimed at preventing

28  "purchased grievances," such an interpretation of the "continuing wrong" exception would
eviscerate Rule 23.1.

1      Based on the foregoing, Plaintiff Krieger does not have standing maintain derivative claims

2 stemming from the PSIC Transaction because of the lack of contemporaneity between his stock

3 acquisition and the period during which the wrongs allegedly occurred.  Fed. R. Civ. P. 23.1.

4      Plaintiff Potter also lacks standing to pursue claims arising from the PSIC Transaction.

5 Though it is undisputed that Potter satisfies that contemporaneous ownership requirement (*see*

6 Am. Compl. ¶ 23), she fails to meet the demand requirement of Rule 23.1.

7      Federal Rule of Civil Procedure 23.1 requires the shareholder in a derivative suit to "allege

8 with particularity the efforts, if any, made by the plaintiff to obtain the action plaintiff desires from

9 the directors or comparable authority and, if necessary, from the shareholders or members, and

10 the reasons for the plaintiff's failure to obtain the action or for not making the effort." Fed. R. Civ.

11 P. 23.1.  In order to satisfy the demand requirement, "[t]he demand must identify the alleged

12 wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the

13 corporation, and request remedial relief."[5] *Lewis v. Sporck,* 646 F. Supp. 574, 578 (N.D. Cal.

14 1986). Moreover, "[t]he demand must [] identify the name of the shareholder requesting the suit."

15 5 Moore's Federal Practice § 23.1.08[2][b] (3d ed. 2005) *citing Smachlo v. Birkelo,* 576 F. Supp.

16 1439, 1444-45 (D. Del. 1983).

17      In this case, the amended complaint fails to allege any demand regarding the PSIC

18 Transactions that names Potter as a shareholder. Rather, Plaintiffs allege that "Krieger, on behalf

19 of himself and another shareholder, Plaintiff Potter, made a formal written demand on the Board

20 of Directors that challenged the fairness of the Company's acquisition of PSIC...." Am. Compl.

21 ¶ 96.  However, Plaintiffs then clarify that Potter was not identified by name in that demand.

22 Plaintiffs allege the November 21, 2002, demand, "made by Dr. Krieger," stated:  Two

23 individuals ('the Plaintiffs') who reside in Southern California where the lawsuit will be filed will join

24

25

---

26    [5] The rationale for the demand requirement is that "before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should
27 show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his
28 wishes." *Hawes v. Oakland,* 104 U.S. 450, 460-461 (1882).

1   with me to bring the action. They are holders of both PSI's common shares and various issues

2   of PSI's preferred stock." *Id.* ¶ 97.

3       Plaintiffs now contend that the above statement "refers to Plaintiff Katherine Potter and

4   another individual who is no longer a PSI shareholder...." Am. Compl. ¶ 97. However, "there was

5   no way PSI could discern Potter's identity from Krieger's vague reference" to "two individuals who

6   reside in Southern California." Defs' P. & A. 5: 26-27. Inasmuch as the amended complaint

7   contains no allegation that Potter, herself, made a demand concerning the PSIC Transaction,

8   Potter does not have standing to pursue claims arising from this transaction. *See Smachlo*, 567

9   F. Supp. at 1445 (dismissing derivative complaint because the demand failed to identify the

10  shareholder).

11      B. <u>Plaintiffs Lack Standing to Maintain Claims Regarding the Canadian Transaction</u>

12      As noted, Rule 23.1 requires the complaint to allege with particularity either that a detailed

13  demand was made on the board of directors, or that making such a demand would be futile. Fed.

14  R. Civ. P. 23.1. The instant complaint fails to allege that either Plaintiff made a valid demand on

15  PSI's Board relating to the Canadian Transaction. Instead, Plaintiffs point to four letters, sent by

16  Krieger to PSI's Board, which they claim satisfy Rule 23.1's demand requirement.

17      According to Plaintiffs, the first letter, dated March 19, 2003, "set forth in detail other

18  related-party transactions, including the Canadian Transaction, where there was evidence of

19  possible wrongdoing due to conflicts of interests." Am. Compl. ¶ 106. The second letter, dated

20  April 7, 2003, "identified financial disclosure issues" as well as "issues related to the Canadian

21  Transaction." *Id.* ¶ 107. Plaintiffs claim that a third letter, dated June 23, 2003, fully discussed

22  the Canadian Transaction and demanded answers. *Id.* ¶ 108. The fourth letter dated November

23  1, 2003, "cited the Canadian Transaction and demanded action." *Id.* ¶ 109.

24      However, mere letters to the board, lacking in specificity that would give the directors an

25  opportunity to make a judgment on the claims, do not constitute a formal demand. *Shlensky v.*

26  *Dorsey*, 574 F.2d 131, 142 (3d Cir. 1978). Similarly, letters which contain conclusory allegations

27  regarding perceived losses to the company have been held insufficient to qualify as a demand.

28  *Seidel v. Public Service Co.*, 616 F.Supp. 1342, 1350 (D.N.H. 1985).

1    Here, the Court notes that Plaintiffs relied on the same letters in opposing Defendants'

2    initial motion to dismiss.  The Court considered and rejected the contention that such letters

3    constitute a valid demand.  The amended pleading provides no grounds for the Court to

4    reconsider this finding.  The letters do not identify the alleged wrongdoers and fail to inform the

5    directors of the factual basis for the claim.  Rather, the letters contain vague and conclusory

6    references to the Canadian Transactions and fail to provide the directors with sufficient

7    information to evaluate the alleged wrongful acts.  Further, there is no indication that Plaintiffs,

8    through these letters, requested remedial relief for harm allegedly arising from the Canadian

9    Transaction.[6]  Thus, the amended complaint falls well short of satisfying the demand provisions

10   of Rule 23.1.  *See Lewis,* 646 F. Supp. at 578.  Accordingly, neither Plaintiff has standing to

11   pursue derivative claims arising from the Canadian Transaction.

12       C. Demand Futility

13       Plaintiffs further assert that, if the Court determines Potter made no demand concerning

14   the PSIC Transaction and neither Plaintiff satisfied the demand requirement with respect to the

15   Canadian Transaction, such demands were futile.  Pls' Opp'n P. & A. 16-17.  As an alternative

16   to a valid demand on the board, a shareholder may plead that a demand should be excused due

17   to futility.  Fed. R. Civ. P. 23.1.

18       The instant futility arguments, however, are not well-taken.  First, there is authority to

19   suggest Plaintiffs cannot claim demand futility in connection with Potter's failure to demand action

20   on the PSIC Transaction because Krieger did, in fact, make a valid demand regarding that claim.

21   *See Stepak v. Addison,* 20 F.3d 398, 412 (11th Cir. 1994) (citing state cases holding that

22   derivative plaintiffs "cannot cover all bases" by having one shareholder make a demand while

23   another asserts demand futility.).

24

25

26

27   [6] The Court notes that Plaintiff Krieger may not be heard to claim that he did not know how to make a valid demand in light of his demand in connection with the PSIC Transaction.  *See* Original Compl. ¶ 104 ("After receipt of Krieger's November 2002 Shareholder's Demand, a special meeting of PSI's Board was held in early December 2002 and a Special Committee of the Independent Directors was appointed, purportedly to investigate Krieger's demand.")

28

1    However, even if Potter could assert futility notwithstanding Krieger's demand, Plaintiffs fail

2    to make a sufficient showing that a demand by Potter would have been futile.  "The test for

3    proving demand futility is whether the facts show a reasonable doubt that (1) the directors are

4    disinterested and independent, and (2) the challenged transaction was otherwise the product of

5    a valid exercise of business judgment." *Oakland Raiders v. NFL,* 93 Cal. App. 4th 572, 587 (Cal.

6    Ct. App. 2001) (citation omitted).  To support their claim of demand futility as to Potter, Plaintiffs

7    rely entirely on paragraph 118 of their amended pleading (Pls' Opp'n P. & A. 16: 22-26), which

8    states:

9         If E&Y (PSI's auditors) was informed [as to the existence of Krieger's demand], why

10        did they countenance PSI's failure to disclose the information to its shareholders in

11        the 2002 financial statements.  Furthermore, why did PSI fail to file a Form 8-K with

12        the SEC disclosing these matters in November and December 2002?  These are

13        also indications of a cover-up. Am. Compl. ¶ 118

14   Plaintiffs, however, fail to explain how such questions constitute *facts* sufficient to cast a

15   reasonable doubt on whether PSI's directors were disinterested and independent.  Thus, Potter's

16   claim of demand futility is without merit.

17        With respect to the Canadian Transaction, Plaintiffs made no demand.  Thus, the only way

18   to avoid dismissal of that claim is to plead futility.  Plaintiffs argue that any demand with regard

19   to the Canadian Transaction would have been futile for the following reasons: (1) PSI's directors

20   are not independent given several board members were or are either employees of or have had

21   business relationships with, PSI or the Hughes Family (Am. Compl. ¶¶ 26-41); (2) the Special

22   Committee is comprised of members who lack independence and are interested (Am. Compl. ¶¶

23   100, 102, 145); (3) the demands made to date have been largely ignored (Am. Compl. ¶¶ 88-16,

24   128-153); (4) the Special Committee acceded to the Hughes' Family Defendants' strategy and

25   eventually suspended its investigation; (5) each of the directors, with the exception of Evans,

26   approved the transactions in question; (6) the Hughes Family Defendants exercised control to

27   dominate the other Board members; and (7) several directors have been entrenched as PSI

28   directors for almost 20 years. Pls' Opp'n P. & A. 17: 3-13.

1       The Court notes, however, that Plaintiffs advanced the same contentions of director bias

2 and lack of independence in opposition to Defendants' initial motion to dismiss. The Court in

3 granting that motion, rejected these arguments finding each allegation insufficient to establish

4 futility of demand with respect to the Canadian Transaction. Plaintiffs now assert that the same

5 allegations, "taken together [and] under the 'totality of the circumstances,' more than adequately

6 overcome a reasonable doubt in the majority of the board's independence and business

7 judgment." Pls' Opp'n P. & A. 17: 14-18.

8       To support this position, Plaintiffs rely on the Delaware Chancery Court case *Cal. Pub.*

9 *Emples. Ret. Sys. v. Coulter,* 2002 Del. Ch. LEXIS 144 (Del. Ch. 2002). In that case, the court

10 explained that allegations relating to personal friendships, family ties, and outside business

11 relationships, standing alone, may be insufficient to demonstrate a director's lack of

12 independence. *Id.* at *29. However, the court held that such factors, if taken together, could

13 provide reason to doubt that the director is disinterested and independent. *Id.*

14       The *Coulter* case, which, of course, is not binding on this Court, provides no support for

15 Plaintiffs' futility argument. First, the case is inapposite inasmuch the court's "reasonable doubt"

16 analysis involved the application of Delaware law. Further, the *Coulter* court found that a number

17 of allegations relating to the personal bias of a single director created a reasonable doubt as to

18 that director's independence. By contrast, Plaintiffs in this case merely provide vague and

19 conclusory allegations pertaining to the entire board, none of which are sufficient to establish lack

20 of independence. Defs' P' & A. pp. 7-10. Moreover, the Court notes that Plaintiffs fail to satisfy

21 the second prong of California's demand futility test because the amended complaint fails to

22 allege that the Canadian Transaction was not otherwise the product of a valid exercise of

23 business judgment. *See Oakland Raiders,* 93 Cal. App. 4th at 587.

24       In sum, Plaintiffs cannot claim demand futility with respect to the PSIC Transaction and fail

25 to properly allege futility relating to the Canadian Transaction.

26   //

27   //

28   //

## IV.    CONCLUSION

Based on the foregoing, the Court concludes that neither Plaintiff has standing to pursue the instant derivative claims under Federal Rule of Civil Procedure 23.1.[7]  The Court, having already permitted leave to amend these deficiencies, hereby **GRANTS** Defendants' motion and dismisses this action with prejudice.

**IT IS SO ORDERED.**

Dated this 30th day of June, 2006.

HON. GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE

---

[7] Because it has determined that Plaintiffs do not have standing to maintain this derivative suit, the Court need not address Defendants' remaining arguments.  Furthermore, in light of Plaintiffs' lack of standing, Defendants Robert J. Abernethy, Dann V. Angeloff, William C. Baker, Thomas J. Barrack Jr., John T. Evans, Uri P. Harkham, and Daniel C. Staton's Motion to Dismiss Amended Complaint (Dck. # 45) is deemed moot.